UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

S.C., a citizen and resident of Florida,

Plaintiff,

v.

CARNIVAL CORPORATION, a Panamanian Corporation d/b/a Carnival Cruise Lines,

Defendant.
_________________________________________/

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff, S.C.,[1] hereby sues Defendant, CARNIVAL CORPORATION, and alleges:

**JURISDICTION, VENUE AND PARTIES**

1. This is an action for damages in excess of seventy-five thousand ($75,000.00) dollars, exclusive of interest and costs.

2. Plaintiff S.C. is *sui juris* (despite the intellectual disability referenced in Paragraph 9 below), and is a citizen and resident of the State of Florida.

3. Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES ("CARNIVAL") is a Panamanian corporation with its principal place of business in the State of Florida. CARNIVAL is a citizen both of Panama and Florida for purposes of determining *in personam* jurisdiction.

4. At all material times, CARNIVAL has conducted ongoing substantial and not isolated business activities in Miami-Dade County, Florida, in the Southern District of Florida,

[1] Plaintiff is proceeding through the use of her initials as a pseudonym due to the sensitive nature of the allegations set forth herein. Carnival is aware of S.C.'s full name, having been advised of it in the notice of claim letter, referenced in Paragraph 8.

so that *in personam* jurisdiction over CARNIVAL exists in the United States District Court for the Southern District of Florida.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333, based on admiralty. The events and injuries alleged below occurred on navigable waters and involved traditional maritime activity, the operation of a passenger cruise vessel.

6. At all material times, CARNIVAL was, and is, engaged in the business of operating maritime cruise vessels for fare-paying passengers, including S.C.

7. In the operative ticket contract, CARNIVAL requires fare-paying passengers such as S.C. to bring any lawsuit against it arising out of injuries or events occurring on the cruise voyage in this federal judicial district, specifically in the Miami Division of this district, so venue accordingly is proper in this Court.

8. S.C. complied with all conditions precedent to bringing this action. S.C. reported her injuries to CARNIVAL's representatives shortly after the incidents occurred, and provided CARNIVAL with timely written pre-suit notice as required by the operative ticket contract, in the form of a letter dated March 31, 2025.

**<u>COMMON ALLEGATIONS</u>**

9. S.C. is an intellectually disabled but *sui juris* adult. In 2024, S.C.'s mother and a family friend booked three cruises on CARNIVAL's vessel, the Carnival Legend ("the LEGEND"), for sailing dates in December 2024, February 2025, and March 2025.

10. At all material times, CARNIVAL was engaged in the business of operating maritime cruise vessels for fare-paying passengers and, for this purpose, operated the LEGEND.

11. At all material times, S.C. was a fare-paying passenger aboard CARNIVAL's passenger cruise vessel LEGEND. At all material times, the itineraries of S.C.'s voyages with CARNIVAL each included a United States port.

12. During the evening of December 1, 2024, S.C. was dining with her family in the Captain's Dining Room onboard the LEGEND. A crewmember of CARNIVAL, one Wendel Gellizeau, ("Gellizeau") served as a waiter onboard the LEGEND during each of S.C.'s voyages on the LEGEND referenced above.

13. During the voyages, Gellizeau became overtly flirtatious with S.C. and used CARNIVAL's internal information system to obtain information about S.C. to assist in his pursuit of her.

14. During the evening of December 1, 2024, the LEGEND held a dinner/dance event. During this event Gellizeau pulled S.C. away from her table to dance with her and began touching her inappropriately in a sexual manner. S.C. attempted to resist but was unable to. Gellizeau also took possession of S.C.'s cell phone and added his contact information into her Facebook and WhatsApp accounts and demanded she contact him.

15. During this same evening, Gellizeau continued to harass S.C. to allow him to come to her room that night. S.C. refused.

16. During the December 2024 cruise, Gellizeau continued to call S.C. and to sexually harass and stalk her.

17. After the December 2024 cruise ended, Gellizeau continued sexually harassing communication with S.C. through a continuous stream of text messages through Facebook and/or WhatsApp and sexually harassed her. The texts became more aggressive and sexual in nature. He began sending nude photos of himself to S.C. and demanding nude photos from S.C. in return. S.C. refused.

18. When S.C. and her family returned for the February 2025 cruise, Gellizeau again was onboard as a crewmember. During this cruise, Gellizeau continued to sexually harass and stalk S.C.

19. During the February 2025 cruise, Gellizeau demanded S.C. bring him bottles of wine on board, which she refused. Gellizeau became irate that S.C. did not comply with his demands and continued to harass and stalk her.

20. During the March 2025 cruise, Gellizeau once again was onboard as a crewmember. Gellizeau continued to text S.C. with increasingly sexual content, including video of him masturbating and ultimately ejaculating.

21. On or around March 10, 2025, Gellizeau again sexually assaulted S.C. by grabbing her in a sexual manner. S.C. again attempted to resist this physical assault. Gellizeau also demanded that S.C. delete the text messages he had been sending her.

22. Late that night or early the next morning, an unknown person believed to be Gellizeau repeatedly called her stateroom and pounded on her stateroom door. After this person departed, S.C. was forced to stay with her mother in a different stateroom out of fear for her safety.

23. Gellizeau further made threats to the safety and security of S.C. by telling her he would come to America and find her.

24. On March 13, 2025, S.C. reported to CARNIVAL's guest services crewmembers and security officers the sexual assaults, sexual battery, stalking and ongoing sexual harassment that began during the cruise in December 2024, continued between the December 2024 and February 2025 cruises, continued during the cruise in February 2025, continued between the February and March 2025 cruises, and continued during the cruise of March 2025.

25. S.C. never consented to the sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct or the stalking, sexual harassment and sexual communication committed against her.

26. At all material times, Gellizeau intentionally took advantage of S.C.'s intellectual disability to stalk, harass, and groom her for nonconsensual sexual activity.

27. As a direct and proximate result of the sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct by CARNIVAL's crewmember as described above, S.C. was injured in and about her body and extremities, including but not limited to psychological and emotional trauma, mental anguish, post-traumatic effects, aggravation or acceleration of preexisting conditions, and the inability to lead a normal life. Furthermore, S.C. incurred medical, hospital, and other out of pocket and health care expenses in the past and future as a result of her injuries; the future medical and health care expenses are reasonably certain to occur. All of these damages are permanent or continuing in their nature and S.C. will continue to sustain and incur these damages in the future.

**COUNT I – VICARIOUS STRICT LIABILITY**

Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 26 and further alleges:

28. At all material times, under applicable federal maritime law, CARNIVAL was and is vicariously and strictly liable for any and all intentionally tortious acts of its crewmembers, such as Gellizeau, committed upon fare-paying passengers such as S.C. in the course of her voyages on the LEGEND.

29. At all material times, Gellizeau acted with the intent to engage in nonconsensual sexual activity with S.C., and thereby committed the intentional tort of sexual assault upon her, for the effects of which CARNIVAL is vicariously and strictly liable as alleged in the preceding paragraph.

30. At all material times, CARNIVAL's crewmember, Gellizeau, physically touched S.C. without her consent multiple times in a sexual manner and acted with the intent to engage in

sexual activity with S.C., and thereby committed the intentional tort of sexual assault and/or sexual battery upon her, for the effects of which CARNIVAL is vicariously and strictly liable as alleged in the preceding paragraph.

31. At all material times, CARNIVAL's crewmember, Gellizeau, acted with the intent to engage in sexual harassment of S.C., including through text messages that included sexual imagery such as photographs and videos of Gellizeau touching his own genitals, and thereby committed the intentional tort of sexual assault upon her, for the effects of which CARNIVAL is vicariously and strictly liable as alleged in the preceding paragraph.

32. At all material times, CARNIVAL's crewmember, Gellizeau, intentionally stalked S.C. through text messages and calls for purposes of sexual assault and/or sexual harassment.

33. As a direct and proximate result of the sexual assault by CARNIVAL's crewmember, Gellizeau, for which CARNIVAL is vicariously and strictly liable as alleged above, S.C. has sustained and will continue in the future to sustain the damages alleged in Paragraph 26.

WHEREFORE, Plaintiff, S.C., demands judgment against Defendant, CARNIVAL CORPORATION, for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

## COUNT II – NEGLIGENT SECURITY BY DEFENDANT CARNIVAL

Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 26 and further alleges:

34. At all material times, CARNIVAL employed the crewmember who sexually assaulted, sexually harassed and stalked S.C., as alleged in Paragraphs 12 through 23, specifically as a waiter in the Captain's Dining Room on board CARNIVAL's cruise vessel LEGEND.

35. At all times material hereto, CARNIVAL knew or should have known of the risk of sexual assault and/or battery committed by its crewmembers upon passengers such as S.C. CARNIVAL's notice is derived from the following sources:

a. The legislative findings published pursuant to the Cruise Vessel Safety and Security Act of 2010, 111 P.L. 207 §2, 124 Stat. 2243 (July 27, 2010), provide in pertinent part that "Sexual violence, the disappearance of passengers from vessels on the high seas, and other serious crimes have occurred during luxury cruises" and that "Over the last 5 years, sexual assaults and physical assaults on cruise vessels were the leading crimes investigated by the Federal Bureau of Investigations with regard to cruise vessel incidents." 111 P.L. 207 §2(4)-(5).

b. In 2023, cruise lines reported 131 sex crimes to the FBI on ships embarking from and disembarking in the United States. In 2022, 87 sexual assaults were reported by the cruise lines. In 2019, before the COVID shutdown of the cruise lines, there were 101 reported incidences of sexual assault.

c. Between 2016 and 2023 there were approximately 224 incidents of sexual assaults that Carnival reported as occurring on its vessels, with at least 25 reported incidents of sexual assault committed by Carnival crewmembers. Carnival has the highest

per-capita rate of sexual assaults in the cruise industry.[2]

d. Prior instances of sexual assaults and/or batteries committed by CARNIVAL's crewmembers include:

i) On March 22, 2024, passenger L.M. was sexually assaulted and sexually battered by a Carnival crewmember, who also continued to contact and harass L.M. through social media; *L.M. v. Carnival Corp.*, 1:25-cv-21095;

ii) On September 28, 2023, passenger Jane Doe was sexually assaulted by a Carnival crewmember, who also used WhatsApp to continually message his victim; *Doe (A.C.) v. Carnival Corp.*, Case No. 1:24-cv-22749-RAR;

iii) On March 4, 2023, minor passenger Mary Doe was sexually assaulted by a Carnival crewmember; *Doe v. Carnival Corp.*; Case No. 1:23-cv-21040-MD;

iv) On November 13, 2022, passenger Jane Doe was sexually assaulted by a Carnival crewmember; *Doe v. Carnival Corp.*, Case No. 1:23-cv-24052-FAM;

v) On September 11, 2022, passenger John Doe was sexually assaulted by a Carnival crewmember; *Doe (C.C.) v. Carnival Corp.*, Case No. 1:23-cv-23381-JEM;

vi) On July 28, 2022, Jane Doe was sexually assaulted by Carnival a crewmember; *Doe (S.K.) v. Carnival Corp.*, Case No. 1:23-cv-22129-RKA;

---

[2] The number of sexual assaults is even higher when one considers the sexual assaults that occur on CARNIVAL's subsidiary cruise lines; the number of victims that do not report the crimes; and the number of sexual assaults committed by crewmembers against other crewmembers, which S.C. has not included in the list of prior incidents. Further, not all of CARNIVAL's subsidiaries are required to report these crimes pursuant to the CVSSA, such that sexual assaults occurring on these cruise lines are not included in the CVSSA statistics.

vii) On July 8, 2022, minor passenger K.R. was sexually assaulted by a Carnival crewmember and threatened her if she told anyone; *Rioux v. Carnival Corp.*, No. 1:23-cv-22348-BB;

viii) On April 1, 2022, passenger Jane Doe was sexually assaulted by a Carnival crewmember on the LEGEND; *Doe v. Carnival Corp.*, Case No. 1:23-cv-22017-RKA;

ix) On August 14, 2021, minor passenger J.C. was sexually assaulted by a Carnival crewmember. *Doe v. Carnival Corp.*, Case No. 1:22-cv-20684-RKA;

x) On February 15, 2020, passenger Jane Doe was sexually assaulted by a Carnival crewmember; *Doe (C.C.) v. Carnival Corp.*, Case No. 1:21-cv-20562-DPG;

xi) On November 15, 2019, minor F.H. was sexually assaulted by a Carnival crewmember; *Doe v. Carnival Corp.*, Case No. 1:20-cv-20737-UU.

e. In addition to all the foregoing, CARNIVAL at all material times had a policy prohibiting crewmembers from fraternizing with or engaging in intimate relations with passengers. The existence of this policy is further evidence that CARNIVAL knew or should have known of the dangers of fraternization between crewmembers and passengers.

36. S.C. is unable to presently determine all of the prior incidents which have occurred providing notice to CARNIVAL, because CARNIVAL regularly resolves cases and requires confidentiality as part of settlements in order to shield the facts and circumstances of prior incidents from publicly available sources. Accordingly, CARNIVAL is orchestrating and is actively involved in concealment of prior incidents which may be substantially similar to the



GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

present incident, which may only be determined through discovery in litigation.

37. Accordingly at all material times, CARNIVAL had a duty of reasonable care toward its fare-paying passengers, including S.C., which included a duty to take reasonable security measures to avoid or minimize sexual offenses, such as acts of sexual assault, sexual battery and/or sexual harassment committed by crewmembers against its passengers.

38. Notwithstanding its actual or constructive knowledge of the risk of sexual assault, sexual battery and/or sexual harassment by crewmembers against passengers, CARNIVAL at all material times breached its duty of reasonable care to take reasonable security measures as alleged above and was thereby negligent through one or more of the following acts of commission and/or omission:

a. Failure to provide an adequate number of security personnel at the material times on board the LEGEND to deter or prevent sexual assaults, sexual battery and/or sexual harassment and other improper sexual conduct by crewmembers against passengers;

b. Failure to provide an adequate number of security personnel on board the LEGEND at the material times to patrol passenger corridors and thereby deter or prevent sexual assault, sexual battery and/or sexual harassment and other improper conduct by crewmembers against passengers;

c. Failure to provide an adequate number of security personnel at the material times in the Captain's Dining Room on board the LEGEND to deter or prevent sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct against passengers by crewmembers working in the dining room;

d. Failure to provide adequate post orders for onboard security personnel on the LEGEND at the material times so as to provide adequate security coverage in the

Captain's Dining Room so as to deter or prevent sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct against passengers by crewmembers working in the dining room;

e. Failure to provide adequate post orders for onboard security personnel on the LEGEND at the material times so as to provide adequate security patrols for passenger corridors, thereby deterring or preventing sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct by crewmembers against passengers;

f. Failure to provide adequate security coverage, staffing and deployment at the material times in the passenger corridors onboard the LEGEND so as to deter or prevent sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct by crewmembers against passengers;

g. Failure to provide adequate security coverage, staffing and deployment at the material times in the Captain's Dining Room on the LEGEND so as to deter or prevent sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct against passengers by crewmembers working in the dining room;

h. Failure to provide adequate video camera coverage at the material times in the Captain' Dining Room onboard the LEGEND so as to deter sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct by crewmembers and to allow for real time monitoring of the dining room by security personnel, thereby allowing timely intervention in the event improper sexual conduct or potential improper sexual conduct by crewmembers against passengers was or should have been detected;

i. Failure to provide adequate video camera coverage at the material times of the passenger corridors onboard the LEGEND so as to deter sexual assault, sexual battery



GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

and/or sexual harassment and other improper sexual conduct and to allow for real time monitoring of the corridors by security personnel, thereby allowing timely intervention in the event improper sexual conduct or potential improper sexual conduct by crewmembers against passengers was or should have been detected;

j. Failure by onboard security personnel adequately to monitor available video cameras covering the Captain's Dining Room onboard the LEGEND so as to deter sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct against passengers and to allow for timely intervention in the event improper sexual conduct or potential improper sexual conduct by crewmembers against passengers was or should have been detected;

k. Failure by onboard security personnel adequately to monitor available video cameras covering the passenger corridors onboard the LEGEND so as to deter sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct therein and to allow for timely intervention in the event improper sexual conduct or potential improper sexual conduct by crewmembers was or should have been detected.

39. As a direct and proximate result of one or more of CARNIVAL's negligent acts and omissions, security onboard the LEGEND was inadequate to deter or prevent the sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct by the crewmember against S.C., as described in Paragraphs 13 through 23, so that the sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct occurred and S.C. sustained and will continue in the future to sustain the damages alleged in Paragraph 26.

WHEREFORE, Plaintiff, S.C., demands judgment against Defendant, CARNIVAL CORPORATION, for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

**COUNT III – NEGLIGENT VETTING/SCREENING OF CREWMEMBERS BY DEFENDANT CARNIVAL**

Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 26 and further alleges:

40. At all material times, CARNIVAL employed the crewmember who sexually assaulted, sexually battered, sexually harassed and stalked S.C., as alleged in Paragraphs 13 through 23, specifically as a waiter in the Captain's Dining Room on board CARNIVAL'S cruise vessel LEGEND.

41. At all times material, CARNIVAL knew or should have known of the risk of sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct committed by its crewmembers against passengers such as S.C. CARNIVAL's notice is derived from the following sources:

a. The legislative findings published pursuant to the Cruise Vessel Safety and Security Act of 2010, 111 P.L. 207 §2, 124 Stat. 2243 (July 27, 2010), provided in pertinent part that "Sexual violence, the disappearance of passengers from vessels on the high seas, and other serious crimes have occurred during luxury cruises" and that "Over the last 5 years, sexual assaults and physical assaults on cruise vessels were the leading crimes investigated by the Federal Bureau of Investigations with regard to cruise vessel incidents." 111 P.L. 207 §2(4)-(5).

b. In 2023, cruise lines reported 131 sex crimes to the FBI on ships embarking and disembarking in the United States. In 2022, 87 sexual assaults were reported by the cruise lines. In 2019, before the COVID shutdown of the cruise lines, there were 101 reported incidences of sexual assault.


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

c. Between 2016 and 2023 there were approximately 224 incidents of sexual assault that Carnival reported as occurring on its vessels, with at least 25 reported incidents of sexual assault committed by Carnival crewmembers. Carnival has the highest per-capita rate of sexual assaults in the cruise industry.[3]

d. Prior instances of sexual assault and/or rape committed by Defendant's crewmembers including:

i) On March 22, 2024, passenger L.M. was sexually assaulted and sexually battered by a Carnival crewmember, who also continued to contact and harass L.M. through social media; *L.M. v. Carnival Corp.*, 1:25-cv-21095;

ii) On September 28, 2023, passenger Jane Doe was sexually assaulted by a Carnival crewmember, who also used WhatsApp to continually message his victim; *Doe (A.C.) v. Carnival Corp.*, Case No. 1:24-cv-22749-RAR;

iii) On March 4, 2023, minor passenger Mary Doe was sexually assaulted by a Carnival crewmember; *Doe v. Carnival Corp.*; Case No. 1:23-cv-21040-MD;

iv) On November 13, 2022, passenger Jane Doe was sexually assaulted by a Carnival crewmember; *Doe v. Carnival Corp.*, Case No. 1:23-cv-24052-FAM;

v) On September 11, 2022, passenger John Doe was sexually assaulted by a Carnival crewmember; *Doe (C.C.) v. Carnival Corp.*, Case No. 1:23-cv-23381-JEM;

---

[3] The number of sexual assaults is even higher when one considers the sexual assaults that occur on CARNIVAL's subsidiary cruise lines; the number of victims that do not report the crimes; and the number of sexual assaults committed by crewmembers against other crewmembers, which S.C. has not included in the list of prior incidents. Further, not all of CARNIVAL's subsidiaries are required to report these crimes pursuant to the CVSSA, such that sexual assaults occurring on these cruise lines are not included in the CVSSA statistics.



GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

vi) On July 28, 2022, Jane Doe was sexually assaulted by Carnival a crewmember; *Doe (S.K.) v. Carnival Corp.*, Case No. 1:23-cv-22129-RKA;

vii) On July 8, 2022, minor passenger K.R. was sexually assaulted by a Carnival crewmember and threatened her if she told anyone; *Rioux v. Carnival Corp.*, No. 1:23-cv-22348-BB;

viii) On April 1, 2022, passenger Jane Doe was sexually assaulted by a Carnival crewmember on the LEGEND; *Doe v. Carnival Corp.*, Case No. 1:23-cv-22017-RKA;

ix) On August 14, 2021, minor passenger J.C. was sexually assaulted by a Carnival crewmember. *Doe v. Carnival Corp.*, Case No. 1:22-cv-20684-RKA;

x) On February 15, 2020, passenger Jane Doe was sexually assaulted by a Carnival crewmember; *Doe (C.C.) v. Carnival Corp.*, Case No. 1:21-cv-20562-DPG;

xi) On November 15, 2019, minor F.H. was sexually assaulted by a Carnival crewmember; *Doe v. Carnival Corp.*, Case No. 1:20-cv-20737-UU.

e. In addition at all material times, CARNIVAL had a policy prohibiting crewmembers from fraternizing with or engaging in intimate relations with passengers. The existence of this policy is further evidence that CARNIVAL knew or should have known of the dangers of fraternization between crewmembers and passengers.

41. S.C. is unable to presently determine all of the prior incidents which have occurred providing notice to CARNIVAL, because CARNIVAL regularly resolves cases and requires confidentiality as part of settlements in order to shield the facts and circumstances of prior incidents from publicly available sources. Accordingly, CARNIVAL is orchestrating and is

actively involved in concealment of prior incidents which may be substantially similar to the present incident, which may only be determined through discovery in litigation.

42. Accordingly at all material times, CARNIVAL had a duty of reasonable care toward its fare-paying passengers, including S.C., which included a duty to take reasonable measures to screen or vet crewmembers and potential crewmembers so as to avoid hiring and/or retaining crewmembers with a propensity to commit sexual offenses against passengers and/or a history of committing such offenses.

43. Notwithstanding its actual or constructive knowledge of the risk of sexual assault on passengers by crewmembers, CARNIVAL at all material times breached its duty of reasonable care to vet or screen crewmembers and potential crewmembers as alleged in the preceding paragraph through one or more of the following acts of commission and/or omission:

a. Failure adequately to investigate the background of its crewmembers before hiring and/or retaining them as crewmembers;

b. Failure to conduct adequate interviews, assessments, background checks, peer reviews, investigations, confirmation of recommendations, and other reasonably necessary background checks and vetting and screening procedures promulgate and/or implement and enforce adequate policies and procedures so as to avoid hiring and/or retaining crewmembers with a propensity to commit sexual offenses or misconduct against passengers and/or a history of committing such offenses or misconduct.

44. As a direct and proximate result of one or more of CARNIVAL's negligent acts and omissions as alleged in the preceding paragraph, CARNIVAL failed to exercise reasonably adequate screening and vetting procedures with regard to Gellizeau, who sexually assaulted and harassed S.C., so that he was hired and retained by CARNIVAL, and he thereby had the opportunity to and did interact with S.C. and commit the sexual assault, sexual battery and/or

sexual harassment and other improper sexual conduct alleged in Paragraphs 13 through 23, and S.C. thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 26 above.

WHEREFORE, Plaintiff, S.C., demands judgment against Defendant, CARNIVAL CORPORATION, for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

**COUNT IV – NEGLIGENT FAILURE TO WARN BY DEFENDANT CARNIVAL**

Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 26 and further alleges:

45. At all material times, CARNIVAL employed Gellizeau who sexually assaulted, sexually battered and/or sexually harassed S.C., as alleged in Paragraphs 13 through 23, specifically as a waiter in the Captain's Dining Room on board CARNIVAL's cruise vessel LEGEND.

46. At all times material hereto, CARNIVAL knew or should have known of the risk of sexual assault, sexual battery and/or sexual harassment committed by its crewmembers upon passengers such as the Plaintiff. Defendant's notice is derived from the following sources:

a. The legislative findings published pursuant to the Cruise Vessel Safety and Security Act of 2010, 111 P.L. 207 §2, 124 Stat. 2243 (July 27, 2010), provided in pertinent part that "Sexual violence, the disappearance of passengers from vessels on the high seas, and other serious crimes have occurred during luxury cruises" and that "Over the last 5 years, sexual assaults and physical assaults on Investigations with regard to cruise vessel incidents." 111 P.L. 207 §2(4)-(5).

b. In 2023, cruise lines reported 131 sex crimes to the FBI on ships embarking and disembarking in the United States. In 2022, 87 sexual assaults were reported by the cruise lines. In 2019, before the COVID shutdown of the cruise lines, there were 101 reported incidences of sexual assault.

c. Between 2016 and 2023 there were approximately 224 incidents of sexual assault that Carnival reported as occurring on its vessels, with at least 25 reported incidents of sexual assault committed by Carnival crewmembers. Carnival has the highest per-capita rate of sexual assaults in the cruise industry.[4]

d. Prior instances of sexual assault and/or rape committed by Defendant's crewmembers:

i) On March 22, 2024, passenger L.M. was sexually assaulted and sexually battered by a Carnival crewmember, who also continued to contact and harass L.M. through social media; *L.M. v. Carnival Corp.*, 1:25-cv-21095;

ii) On September 28, 2023, passenger Jane Doe was sexually assaulted by a Carnival crewmember, who also used WhatsApp to continually message his victim; *Doe (A.C.) v. Carnival Corp.*, Case No. 1:24-cv-22749-RAR;

iii) On March 4, 2023, minor passenger Mary Doe was sexually assaulted by a Carnival crewmember; *Doe v. Carnival Corp.*; Case No. 1:23-cv-21040-MD;

iv) On November 13, 2022, passenger Jane Doe was sexually assaulted by a Carnival crewmember; *Doe v. Carnival Corp.*, Case No. 1:23-

---

[4] The number of sexual assaults is even higher when one considers the sexual assaults that occur on CARNIVAL's subsidiary cruise lines; the number of victims that do not report the crimes; and the number of sexual assaults committed by crewmembers against other crewmembers, which S.C. has not included in the list of prior incidents. Further, not all of CARNIVAL's subsidiaries are required to report these crimes pursuant to the CVSSA, such that sexual assaults occurring on these cruise lines are not included in the CVSSA statistics.

cv-24052-FAM;

v) On September 11, 2022, passenger John Doe was sexually assaulted by a Carnival crewmember; *Doe (C.C.) v. Carnival Corp.*, Case No. 1:23-cv-23381-JEM;

vi) On July 28, 2022, Jane Doe was sexually assaulted by Carnival a crewmember; *Doe (S.K.) v. Carnival Corp.*, Case No. 1:23-cv-22129-RKA;

vii) On July 8, 2022, minor passenger K.R. was sexually assaulted by a Carnival crewmember and threatened her if she told anyone; *Rioux v. Carnival Corp.*, No. 1:23-cv-22348-BB;

viii) On April 1, 2022, passenger Jane Doe was sexually assaulted by a Carnival crewmember on the LEGEND; *Doe v. Carnival Corp.*, Case No. 1:23-cv-22017-RKA;

ix) On August 14, 2021, minor passenger J.C. was sexually assaulted by a Carnival crewmember. *Doe v. Carnival Corp.*, Case No. 1:22-cv-20684-RKA;

x) On February 15, 2020, passenger Jane Doe was sexually assaulted by a Carnival crewmember; *Doe (C.C.) v. Carnival Corp.*, Case No. 1:21-cv-20562-DPG;

xi) On November 15, 2019, minor F.H. was sexually assaulted by a Carnival crewmember; *Doe v. Carnival Corp.*, Case No. 1:20-cv-20737-UU.

e. In addition to all the foregoing, CARNIVAL at all material times had a policy prohibiting crewmembers from fraternizing with or engaging in intimate relations with passengers. The existence of this policy is further evidence that CARNIVAL knew or should have known of the dangers of fraternization between crewmembers and

passengers and should have required passengers to be escorted by authorized security personnel rather than unauthorized crewmembers prohibited from fraternization with passengers.

47. S.C. is unable to presently determine all of the prior incidents which have occurred providing notice to CARNIVAL, because CARNIVAL regularly resolves cases and requires confidentiality as part of settlements in order to shield the facts and circumstances of prior incidents from publicly available sources. Accordingly, CARNIVAL is orchestrating and is actively involved in concealment of prior incidents which may be substantially similar to the present incident, which may only be determined through discovery in litigation.

48. Accordingly at all material times, CARNIVAL had a duty of reasonable care toward its fare-paying passengers, including S.C., which included a duty to take reasonable measures to warn passengers adequately regarding the risks of sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct by crewmembers against passengers.

49. Notwithstanding its actual or constructive knowledge of the risk of sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct by crewmembers against passengers, CARNIVAL at all material times breached its duty of reasonable care by failing adequately to warn passengers, including S.C., regarding the risks of sexual assault, sexual battery and/or sexual harassment and other improper sexual conduct by crewmembers against passengers by orally delivered or written warnings or otherwise.

50. As a direct and proximate result of CARNIVAL's negligence, S.C. was not adequately informed of the risks of sexual assault, sexual battery and/or sexual harassment or other improper sexual conduct by crewmembers against passengers.


GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

51. As a further direct and proximate result of CARNIVAL's negligent failure to warn, S.C., due to her lack of awareness of the risk of onboard sexual assault or sexual misconduct by crewmembers was unable to resist when Gellizeau sexually assaulted her, sexually battered her, sexually harassed her and/or stalked her, so that Gellizeau had the opportunity to and did interact with S.C. and commit the sexual assault, sexual battery, sexual harassment and/or stalking or other improper sexual conduct alleged in Paragraphs 13 through 23, and S.C. thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 26.

WHEREFORE, Plaintiff, S.C., demands judgment against Defendant, CARNIVAL CORPORATION, for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all issues so triable as of right.

Executed January 29, 2026.

**s/PHILIP M. GERSON**
PHILIP M. GERSON, ESQ.
Florida Bar No. 127290
pgerson@gslawusa.com
filing@gslawusa.com
NICHOLAS I. GERSON, ESQ.
Florida Bar No. 20899
ngerson@gslawusa.com
EDWARD S. SCHWARTZ, ESQ.
Florida Bar No. 346721
eschwartz@gslawusa.com
DAVID MARKEL, ESQ.
Florida Bar No. 78306
dmarkel@gslawusa.com
NICHOLAS M. PLYMALE, ESQ.
Florida Bar No. 1057884
nplymale@gslawusa.com
ANDREA B. CHIRLS, ESQ.
Florida Bar No. 968765
achirls@gslawusa.com
LEE A. WATSON, ESQ.
Florida Bar No. 956750
lwatson@gslawusa.com
GERSON & SCHWARTZ, P.A.
Attorneys for Plaintiff
1980 Coral Way
Miami, Florida 33145-2624
Telephone: (305) 371-6000
Facsimile: (305) 371-5749